**Adolph LERCHENSTEIN, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. A–2172.**

Court of Appeals of Alaska.

March 24, 1989.

Paul E. Malin, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

This case is before us for the second time. Adolph Lerchenstein was indicted, on May 25, 1982, on three counts of assault in the third degree, AS 11.41.200(a), and one count of murder in the first degree, AS 11.41.100(a)(1). Lerchenstein was convicted as charged following a jury trial. This court reversed Lerchenstein's conviction in *Lerchenstein v. State*, 697 P.2d 312 (Alas-

ka App.1985). The supreme court affirmed our decision reversing Lerchenstein's conviction in *State v. Lerchenstein*, 726 P.2d 546 (Alaska 1986). This case was retried in February of 1987. A jury convicted Lerchenstein of the lesser included offenses of murder in the second degree, AS 11.41.110, and reckless endangerment, AS 11.41.250. He was also convicted of two counts of assault in the third degree, AS 11.41.220(a). Lerchenstein now appeals to this court. We affirm.

In our original *Lerchenstein* opinion we set forth the facts as follows:

On May 17, 1982, at approximately 1:00 p.m., Adolph Lerchenstein, owner of Alert TV, phoned Custom Coach Auto Body, which is located across the street from Alert TV. He spoke with Michael Hoffman, a co-owner of the auto repair shop. Lerchenstein called to inquire about the progress of an estimate for repair work on his truck which he had left at Custom Coach a week earlier. When Hoffman informed Lerchenstein that the estimate was not ready, an argument ensued in which, according to Hoffman and not disputed by other evidence, Lerchenstein became extremely angry, and in a rash tone cursed Hoffman and made disparaging remarks about his business. Hoffman requested that Lerchenstein come get his truck.

Lerchenstein sent an employee across the street to Custom Coach to retrieve the truck. When the employee arrived, Hoffman told him that a thirty-five dollar storage fee would be charged on the truck. Hoffman testified that he decided to charge this fee, which he did not customarily collect, because he was angry about Lerchenstein's comments to him on the phone. The employee returned to Alert TV.

A short time later, Lerchenstein crossed the street and entered his truck. Michael Hoffman approached the window of the truck with a bill and told Lerchenstein that he owned the storage fee. At this point, Hoffman testified, Lerchenstein "started acting real erratical.... [H]e was inside the truck and he just

started jumping up and down...." Hoffman testified he told Lerchenstein that he was going to call the police, and then walked down the side of and behind the truck.

At this point the particular events giving rise to the charges occurred. Lerchenstein drove his truck in reverse (there was a large sand pile in front of the truck), striking Michael Hoffman and dragging him beneath the vehicle as Hoffman held on to the bumper. Lerchenstein stopped traveling in reverse and apparently began to shift to drive. The truck stalled. Around this time Don Hoffman, Ron Hoffman, and Lance De-Saw ran towards Lerchenstein's truck. Michael Hoffman's brother, Don Hoffman, reached the truck on the passenger's side. Don Hoffman testified that he opened the door of the cab and climbed partly onto the front seat of the truck. He then noticed a handgun on the seat. Lerchenstein picked up the gun and pointed it in Don Hoffman's direction, but did not fire. Don Hoffman slid out of the truck. At about the same time another Hoffman brother, Ron, reached the driver's side of the truck, along with DeSaw, co-owner of Custom Coach. Both reached in through the window on the driver's side. Ron Hoffman had a cast on his wrist at the time. At some point after Don Hoffman slid out of the truck, Lerchenstein's glasses were knocked off. Lerchenstein fired twice in the direction of Ron Hoffman and De-Saw, striking Ron Hoffman in the chest with one of the shots and fatally wounding him. Then, DeSaw testified, Lerchenstein pointed the gun directly at him, at which point DeSaw dropped to the ground.

Ron Hoffman ran to a nearby service station where he collapsed. Lerchenstein went to the same station, where he announced that he had just been assaulted, and made a "911" emergency telephone call reporting the "assault." After the phone call, one witness testified, Lerchenstein walked over to the collapsed Ron Hoffman and said, "lay there and die, you son of a bitch." When

informed later that Hoffman had died, Lerchenstein commented to an investigating police officer, "It's tough, it happened, I don't regret it."

While it was undisputed that Lerchenstein fired the shot which caused Ron Hoffman's death, the state and the appellant characterize the preceding chain of events quite differently. Under the defense theory, Michael Hoffman was struck by the truck by mistake, and Ron Hoffman was shot (and Don Hoffman and DeSaw assaulted) in perceived self-defense. The prosecution, rather, characterizes the events as an intentional overreaction by an angered Lerchenstein. There was conflict as to whether Lerchenstein knew Michael Hoffman was behind the truck. Testimony conflicted as to whether the three men running toward the truck were yelling, "stop, stop" (testimony of Don Hoffman), and "hey, you're—you're killing him, you know, he's under the truck" (testimony of De-Saw), or "hold him back, don't let him get out of here" (testimony of bystander). The defense presented testimony that one of the men struck Lerchenstein in the head before any shots were fired. Finally, whether the gun had been carried across the street by Lerchenstein that day or had been pulled out from under the seat of the truck just prior to the shooting was an issue of considerable disagreement, and an issue to which the parties and the court attached great significance.

697 P.2d 313–14 (footnote omitted).

On retrial the facts and issues presented were essentially the same. Lerchenstein raises one issue on appeal; he argues that the trial judge erred in limiting Lerchenstein's cross-examination of Donald Hoffman about an incident that allegedly reflected Donald Hoffman's bias.

In April 1986, Donald Hoffman and his brother, Robert Hoffman, broke into a liquor store on Spenard Road and stole some alcoholic beverages. During the burglary, they were filmed by a video camera in the store and were observed by witnesses. The witnesses led the police to the trailer

across the street from the liquor store where the Hoffmans were living. Several officers surrounded the trailer. An officer then knocked on the door and informed Donald Hoffman that the police were getting a search warrant. There were several people in the trailer including Donald Hoffman, who was intoxicated. Donald Hoffman went out the front door of the trailer, and approached the officers. He created a commotion by screaming and yelling and tried to walk away, telling the police that they could not arrest him. Robert Hoffman then fled out of the back door of the trailer. There was an outstanding felony warrant for Robert Hoffman. Police Officer Nancy Heun arrested Donald Hoffman for hindering prosecution. The hindering prosecution charge was later dismissed.

At trial Lerchenstein argued that he should be allowed to present evidence of the events which led to the hindering prosecution charge. He argued that this evidence was admissible as evidence of bias under Alaska Evidence Rule 613. He argued that the evidence demonstrated Donald Hoffman's willingness to engage in illegal conduct to protect one of his brothers. A hearing was held outside the presence of the jury in which testimony was taken from Officer Heun and Donald Hoffman. Heun testified that when she made the arrest, she believed that Donald Hoffman had intentionally created a distraction to allow Robert to escape. Donald Hoffman testified that he had not purposely distracted the police to allow his brother to escape. Judge Katz concluded that the probative value of the evidence was outweighed by the danger of unfair prejudice. A.R.E. 403. Judge Katz decided against admitting this evidence.

Evidence Rule 613(a) provides, in part, that "evidence of bias or interest on the part of a witness [is] admissible for the purpose of impeaching the credibility of a witness." The Commentary to Evidence Rule 613 states that "[t]he right of the criminal defendant to probe a witness for evidence of bias or interest has been recognized by the Supreme Court as being essential to the right of confrontation guaranteed by the sixth amendment." The Com-

mentary cites decisions that have emphasized the importance of allowing cross-examination of a witness as to bias or interest. *Davis v. State*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *R.L.R. v. State*, 487 P.2d 27, 44 (Alaska 1971). Although evidence of bias is generally admissible, admission of relevant evidence is subject to the provisions of Evidence Rule 403. Evidence Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In reviewing a decision by the trial court to admit or exclude evidence, we are to reverse only if we find an abuse of discretion. *Hawley v. State*, 614 P.2d 1349, 1361 (Alaska 1980). We have reviewed the record and we conclude that Judge Katz did not abuse her discretion in refusing to admit the testimony concerning the hindering prosecution allegation. As Judge Katz pointed out, whether Donald Hoffman had actually intended to distract the police so that Robert could escape was far from clear. Shortly before the incident, Donald Hoffman had committed a burglary and theft and had just been informed by the police that they were obtaining a search warrant for his trailer. His purpose in approaching the police was unclear. Furthermore, the hindering prosecution charge was ultimately dismissed.

The jury already had before it Donald Hoffman's admission that he had been convicted of burglary and theft. Judge Katz reasoned that going into this additional incident might prejudice the jury against the Hoffman family. The presentation of this additional incident also had the potential to raise additional issues which might confuse the jury.

In addition, Lerchenstein was fully able to develop Donald Hoffman's bias and interest in this case. Donald Hoffman was personally involved in the incident which resulted in the charges against Lerchenstein. According to Donald Hoffman, Ler-

**1154**

chenstein had attempted to run over his brother, Michael Hoffman, and had pointed a gun at Donald Hoffman when he attempted to intervene. Lerchenstein also killed Ron Hoffman, Donald's brother. In addition, Lerchenstein was able to undermine Donald Hoffman's credibility by introducing his criminal convictions. In final argument to the jury, Lerchenstein's counsel pointed out to the jury the extreme interest and bias that Donald Hoffman had as a result of his involvement in the case. It seems highly unlikely that introduction of the incident would have had any relevant impact on the jury's evaluation of Donald Hoffman's bias or credibility. We accordingly conclude that Judge Katz did not err in excluding evidence of this incident.

Lerchenstein's conviction is AFFIRMED.