Booker T. BROWN, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–2315, A–2416.

Court of Appeals of Alaska.

Sept. 1, 1989.

Matthew W. Claman, Asst. Public Defender, Juneau, and John B. Salemi, Acting Public Defender, Anchorage, for appellant.

Tonja Woelber, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Booker T. Brown was convicted of two counts of misconduct involving a controlled substance in the third degree (delivery of cocaine). Brown appeals his convictions, arguing that the trial court erred in prohibiting him from cross-examining the undercover officer concerning racial bias. We affirm.

Francis Dehghani was hired by the Alaska State Troopers to do undercover drug investigations in Alaska by posing as a photojournalist working for a New York magazine.

Dehghani testified to the following: On October 31, 1986, she was sitting in the entryway of the Emporium Mall in Juneau when Brown walked in. Dehghani did not know Brown, but she noticed him because he had two gold front teeth. Dehghani approached Brown and told him he looked familiar. Brown replied that she may have seen him at the Penthouse Lounge. After a brief conversation, the two exchanged telephone numbers.

Dehghani said she called Brown later that day. They agreed to meet at a nightclub called the Landing Strip. Dehghani said she told Brown that she was looking for cocaine. She testified that Brown said he would probably be able to get her some.

Dehghani testified that she met Brown that evening at the Landing Strip. The two discussed the price of cocaine and agreed on $130 for a gram. Brown took Dehghani's money, walked over to the bar, and returned with two bindles of cocaine, each containing one-half gram. Dehghani did not see where he obtained the cocaine. The next day, Dehghani gave the cocaine to her supervisor.

Dehghani and Brown arranged to meet again at a restaurant on November 5. Dehghani said she asked Brown, prior to their meeting, to sell her another gram of cocaine. The police obtained a warrant to electronically record the meeting. At the restaurant, Dehghani and Brown discussed the previous cocaine sale. Brown then told Dehghani he had not brought any cocaine with him. The two agreed that Dehghani would meet Brown at his house later that evening to pick up the cocaine. Dehghani gave Brown $150 and asked him to give her $20 in change later.

Dehghani met Brown later at his house. This meeting was also tape-recorded. Brown handed Dehghani a film canister with cocaine in it and $20 in change. Dehghani asked Brown if he could get her an eighth of an ounce of cocaine. Brown said that he would check with his sources. Dehghani left and took the cocaine and the change to her supervisor.

Brown was indicted for two counts of misconduct involving a controlled substance in the third degree. AS 11.71.-030(a)(1).

During jury selection, a potential juror, Jack Speed, told the court that he would be uncomfortable sitting on Brown's case because Dehghani had tried to "set up" a friend of his. Speed added, "It upset a lot of people that this person would pose as a journalist and try to set up a man." Speed also stated, "[M]y friend was colored why he was a natural target." When defense counsel asked Speed whether he thought Dehghani had been acting "with a certain amount of racial bigotry," he replied, "I kind of believe so, yes."

The state asked the court for a protective order concerning defense arguments or questions about Dehghani's alleged racial bias. Defense counsel indicated that Dehghani had been involved in thirteen arrests in Southeast Alaska, five of which

involved racial minorities. Defense counsel suggested that if Dehghani were prejudiced against blacks she "would have a greater tendency to fabricate and set up a black person as opposed to a white person." The state countered that of the thirteen arrests Dehghani had participated in, including Brown's, eight arrestees were Caucasian, one was Mexican, two were Alaska Natives and two were black.

Defense counsel responded that Dehghani had tried to buy drugs from another black man, Sherman Brown (juror Jack Speed's friend). The prosecutor pointed out that since Sherman Brown did not sell Dehghani any drugs he was not part of a relevant statistic, unless the defense could make an offer of proof on the racial composition of all the people Dehghani had tried unsuccessfully to buy drugs from.

After the direct examination of Dehghani, defense counsel asked permission to question Dehghani about the racial composition of the people she helped arrest in Southeast Alaska. Outside the presence of the jury, defense counsel asked Dehghani about Sherman Brown. Dehghani said Sherman Brown had told her he might be able to get her drugs, but later backed out. Defense counsel later established in an offer of proof, that Dehghani was confusing Sherman Brown, who had never offered to sell her drugs, with another black man named Barry Best, who had. Dehghani also said she had participated in the arrest of James Baron, who was black. In other testimony outside the presence of the jury, Dehghani denied that she felt uncomfortable around blacks.

After examination of Dehghani outside the presence of the jury, the court ruled:

[O]n this record I can't see the need for further inquiry. The voir dire has not told me a whole lot more than the offer of proof, and it just does not appear that there's a reason for going down this path. I think it would inject some confusion but the primary point is a delay. Although it's not going to be an inordinate delay it is undue in the sense that there's so little to be found with regard to evidence. It is the slenderest of reeds and so I think we are going to be wasting time in view of the lack of evidence to be discovered after all the questions that are put to the witnesses and so for that reason I'm going to preclude the area of inquiry unless more evidence is uncovered that provides a basis for an inference.

Later in the trial, defense counsel attempted to introduce testimony regarding the fact that Dehghani had confused Sherman Brown with Barry Best. Defense counsel argued that Dehghani's confusion reflected on her credibility and her ability to recollect events. The court sustained the state's objection that the testimony would be irrelevant.

Brown testified in his own defense at trial. He said Dehghani asked him to get her a gram of cocaine, but he refused, explaining to her that he was on parole and did not want to go back to jail. He denied getting her any drugs on October 31 at the Landing Strip. Brown admitted that he met Dehghani at a restaurant on November 5, and later that day at his house, but denied giving her any drugs or returning change to her. On cross-examination, Brown acknowledged that he had listened to the two tapes (the one made at the restaurant and the one made at his house) and admitted that they were accurate.

■ Brown argues on appeal that the trial court erred when it refused to allow him to cross-examine Dehghani before the jury about her possible racial bias. He contends that neither delay nor confusion is a valid basis for prohibiting cross-examination by the accused. Alaska Evidence Rule 403 directs, in part, that relevant evidence can be excluded if the probative value of the evidence is outweighed by confusion of the issues or by considerations of undue delay. Brown argues that Evidence Rule 403 is the wrong standard to apply in determining whether cross-examination should be allowed in criminal cases. Brown insists that, because the constitutional right to confrontation is involved, the court must follow case law dealing with the issue of cross-examination by the accused in criminal cases. According to Brown, the stan-

dards developed by the case law dealing with defense cross-examination differ from those set forth in Evidence Rule 403.

Brown cites *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). In *Davis,* the Court states:

Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude *repetitive and unduly harassing interrogation,* the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.,* discredit, the witness.

(Emphasis added.) Brown adds that the Alaska Supreme Court has also enumerated several permissible bases on which to preclude cross-examination: "[The right to cross-examine] does not entail the right to harass, annoy, or humiliate a witness on cross-examination, nor to engage in repetitive questioning, nor to inquire into matters which would expose the witness to danger of physical harm." *Evans v. State,* 550 P.2d 830, 837 (Alaska 1976).

Brown reasons that a trial court can exclude cross-examination for the reasons discussed in these cases, but not for the reasons listed in Rule 403. According to Brown, the trial court erred in excluding the disputed evidence because confusion and delay, the bases for the trial court's ruling, are not among the bases for exclusion under the "constitutional rule" that governs cross-examination.

This argument has no merit. Brown's right to confrontation certainly restricted the ordinarily broad scope of the trial court's discretion to exclude potentially relevant evidence and required the court to exercise vigilance in assuring that Brown received a full opportunity to develop evidence of bias through cross-examination. Nevertheless, the analytical framework governing the trial court's decision on admissibility remained that spelled out in Evidence Rule 403.

In *Lerchenstein v. State,* 770 P.2d 1150, 1153 (Alaska App.1989), we stated: "Although evidence of bias is generally admissible, admission of relevant evidence is subject to the provisions of Evidence Rule 403." Similarly, in *Larson v. State,* 656 P.2d 571, 575 (Alaska App.1982) (citations omitted), we said:

Larson is therefore incorrect in reading *Chambers* [*Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)] for the proposition that a rule similar to Alaska Rule of Evidence 403 can never be applied to exclude evidence offered by a defendant in a criminal case which is minimally relevant under Alaska Rule of Evidence 401. While Larson is correct that credibility of witnesses and the weight of evidence is usually left to the jury, the trial court must consider the probative value of evidence in carrying out the balancing required by Alaska Rule of Evidence 403. We are satisfied that the trial court did that in this case and reached a just result. We specifically hold that Alaska Rule of Evidence 403, when properly applied, does not violate a defendant's constitutional right to confront the witnesses against him and present evidence in his own behalf.

Although the defendant's right to confrontation is fundamental, there is nothing to suggest that the application of Rule 403 violates this right. The cases cited by Brown do not create standards to replace Rule 403, but rather to augment it. Numerous other cases support the same conclusion. *See, e.g., Olden v. Kentucky,* —— U.S. ——, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988); *Lee v. State,* 422 So.2d 928, 931 (Fla.Dist.Ct.App.1982). In *Chipman v. Mercer,* 628 F.2d 528, 531 (9th Cir.1980) (citations omitted), the court stated:

We have recognized that "some topics may be of such minimal relevance that the trial court would be justified either in totally prohibiting cross-examination about them or in allowing only limited questioning." *Davis v. Alaska* and our own precedents do not require a trial court to permit cross-examination on topics of very slight or marginal relevance

simply upon the theory that bias or prejudice might be disclosed. Although it tips the scales in favor of permitting cross-examination, the confrontation clause does not prevent the trial court from weighing the offer of proof to determine its probative value to the trier of fact and its probable effect on fair and efficient conduct of the trial.

■ The question in this case is thus whether the trial court properly performed the Rule 403 analysis. The court stated that although the delay would not be "inordinate ... it is undue in the sense that there's so little to be found with regard to evidence." Despite numerous opportunities, including a comprehensive *voir dire* of Dehghani outside the presence of the jury, Brown was unable to produce any evidence or elicit any testimony that Dehghani was racially biased. Standing alone, the bare statistics regarding the number of minority individuals Dehghani arrested provided no evidence of racial bias, nor does the conclusory opinion of prospective juror Jack Speed amount to evidence of racial bias.[1]

On this record, there is simply nothing to indicate that the restriction on cross-examination precluded Brown from presenting any competent evidence of racial bias. Because the evidence was so marginally probative, exclusion based on confusion and delay was justified. The trial court did not abuse its discretion in determining that undue delay justified exclusion.

■ Later in the trial, Brown asked to examine Dehghani about her confusion of Sherman Brown and Barry Best. Brown's examination of Dehghani about her confusion of the two men was intended to reflect on "her credibility, her ability to tell the truth, and also her ability to recollect events." Brown did not suggest that examination on this matter was for the purpose of showing racial bias. The court sustained the state's objection to introducing the evidence, ruling that it was not relevant.

Brown argues that the evidence was relevant. Alaska Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Although impeaching a witness' credibility by testing her memory is valid in some instances, the fact that Dehghani confused the names of two men who were wholly unrelated to the present case is not particularly relevant to her memory regarding this case. The trial judge did not abuse his discretion in excluding this evidence.

■ On appeal, Brown argues for the first time that evidence of Dehghani's confusion of Sherman Brown and Best might have shown that Dehghani has a tendency to confuse blacks, and that she might have confused Brown's case with other investigations involving black people. Brown did not make this argument at the trial level, and there was no plain error in not admitting the evidence on this ground.[2]

---

1. We emphasize that the trial court's ruling restricting cross-examination dealt with Brown's apparent desire to establish the racial composition of persons previously arrested by Dehghani and to explore the details of the prior arrests. Brown does not contend that the trial court precluded him from asking Dehghani directly if she was biased against blacks or other racial minorities. Our own reading of the record discloses nothing to indicate that direct questions concerning Dehghani's bias would have been disallowed. Dehghani's testimony outside the presence of the jury indicates that, had she been asked directly about racial bias, she would have testified that she was not biased and would have provided convincing information concerning her personal background to support her testimony. In context, it appears that Brown's trial

counsel wisely elected to forego the more direct line of inquiry into Dehghani's racial views.

2. Following Brown's conviction, the superior court revoked his probation for a prior offense and ordered Brown to serve the remaining one year in that case. In this appeal Brown also challenges the court's order revoking his probation. His argument, however, depends entirely on the issues raised in his appeal from the new convictions. The new convictions were the sole basis for revocation of Brown's probation. Where a conviction is "the sole basis for the revocation of probation" and the appellate court reverses the conviction on the underlying offense, then the probation revocation must also be reversed. *Oksoktaruk v. State,* 619 P.2d 480 (Alaska 1980). Because Brown's convictions in

The trial court did not err in prohibiting cross-examination of Dehghani regarding racial bias. The judgment is AFFIRMED.

this case are not being reversed, however, his probation revocation must stand.