**Garold E. CHARLES, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. A–2181.**

Court of Appeals of Alaska.

Sept. 8, 1989.

---

378

Ray R. Brown, Asst. Public Defender, Juneau, Mary P. Treiber, Asst. Public Defender, Ketchikan, and Dana Fabe and John Salemi, Public Defenders, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible and Douglas B. Baily, Attys. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Garold E. Charles was convicted, following a jury trial, of attempted murder in the first degree, a class A felony. Former AS 11.41.100(a)(1); AS 11.31.100(a). Superior Court Judge Henry C. Keene, Jr., sentenced Charles to twenty years of imprisonment. Charles appeals his conviction and sentence. We affirm Charles' conviction and remand his sentence.

On February 26, 1986, Edward "Pete" Allen and his wife were staying at a trailer on the grounds of the home of Ginger Fox in Saxman, near Ketchikan. Allen's wife Margaret Allen, Ginger Fox, and the present defendant, Garold "Gary" Charles, are all siblings.

According to Allen's testimony at trial, on the evening of the 26th, Allen was watching TV in the main house. Garold Charles knocked on the door and Allen let him in. The two watched TV for a couple of minutes, then Allen heard the sound of a shotgun being pumped behind him. He turned around and saw Charles pointing the shotgun at him. Charles told Allen he was going to kill him. Allen asked him why, and Charles said that Allen had been "up north killing people." Allen testified he did not have any idea what Charles was talking about. Stan Szweda, Ginger Fox's husband, was in bed in the house. Allen yelled for Szweda; Charles told him to shut up. Charles threatened to kill Szweda also.

Allen tried to escape from the house, and Charles shot him in the back of the head. Allen fell to the floor, cursing at Charles and saying, "You're killing me." Allen testified: "[Charles] said that's what I'm planning on [sic] to do, so you're dead meat, and he pumped another shotgun shell into the shotgun and shot me again." Allen was still conscious but played dead. After waiting a few minutes until he thought Charles had left, Allen managed to crawl to the house next door.

Szweda awoke, climbed out a window, and called the state troopers from a neighbor's house. According to the police dispatcher who took the call, Szweda spoke in a hushed voice as though he was afraid someone might overhear him. Szweda told the dispatcher "that there'd been a shooting, that someone had yelled 'I'm a dead man' and ... we needed to get an ambulance out there, that Pete Allen had been shot by Garold Charles."

After the ambulance took Allen away, Trooper Sergeant John Glass talked to Szweda, who, according to Glass, was "[e]xcited, scared, shaking." Szweda described hearing Allen say, "Don't kill me" and Charles saying, "I'm going to kill you." Glass took a recorded statement from Szweda.

Troopers canvassed the neighborhood and found no sign of Charles. Over the next few days, they conducted extensive searches for him. Charles turned himself in in Ketchikan about two weeks later. At that time, he was suffering severe pain in his feet.

Meanwhile, Allen had undergone emergency surgery, and required several operations thereafter. At the time of trial, eleven months later, he continued to have balance problems and was hard of hearing, as a result of damage to his inner ear caused by the shooting. He had not been able to work since the shooting.

Prior to trial, Szweda died. The state offered both his telephone call to the police dispatcher and his interview with Sgt. Glass as excited utterances. Over objection, Judge Keene held that Szweda's statements would be admissible.

Prior to opening statement, defense counsel moved for a protective order to exclude evidence or argument about Charles' flight and hiding after the offense. The judge took the request under advisement. The next day, he denied the protective order.

On the night after the jury was selected and before trial was to begin, Allen, the victim in the present case, was arrested and charged with the murder of Gordon Lewis. Lewis was Charles' brother-in-law, the husband of his sister, Lillian Bickmore. The state moved for a protective order to prevent mention of this incident before the jury. The judge granted the protective order.

During cross-examination, defense counsel asked Allen whether he felt that he was aligned with the prosecution or the defense. Allen claimed allegiance to neither side. Counsel then asked, "Do you feel it is in your interest to help the prosecution in this case?" After an objection and a bench conference which is not transcribed, counsel moved on without that question being answered. Allen admitted having negative feelings towards Charles' family based on specified other things besides being shot by Charles.

After the state rested, Charles asked the judge to lift the protective order to allow presentation of evidence that Allen had a pending murder charge. The judge adhered to his earlier ruling.

Two defense witnesses testified that Allen had threatened to kill Charles in the past. Allen's estranged wife testified that Allen was aggressive and violent. However, Charles did not testify. The jury convicted Charles of attempted murder in the first degree.

■ Charles first contends that the trial court erred in refusing to allow him to cross-examine Allen, the complaining witness, about the pending murder charge.

Charles argues that the evidence was relevant to show Allen's bias and his character for violence. In the trial court, Charles asked that he be allowed to ask the following questions:

1. Whether Allen was currently charged with an unclassified felony under the laws of the State of Alaska;

2. The potential penalty for such a crime;

3. Whether or not if he was proven guilty of the crime he would expect to be in prison;

4. Whether or not the assistant district attorney or one of his colleagues then prosecuting Charles would be prosecuting the charges against Allen; and

5. That the above factors gave Allen an incentive to testify in a manner beneficial to the state's present case against Charles.

The court denied Charles' motion.

We recently discussed the admission of evidence to show the bias or interest of a witness in *Lerchenstein v. State*, 770 P.2d 1150, 1153 (Alaska App.1989):

Evidence Rule 613(a) provides, in part, that "evidence of bias or interest on the part of a witness [is] admissible for the purpose of impeaching the credibility of a witness." The Commentary to Evidence Rule 613 states that "[t]he right of the criminal defendant to probe a witness for evidence of bias or interest has been recognized by the Supreme Court as being essential to the right of confrontation guaranteed by the sixth amendment." The Commentary cites decisions that have emphasized the importance of allowing cross-examination of a witness as to bias or interest. *Davis v. State*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *R.L.R. v. State*, 487 P.2d 27, 44 (Alaska 1971). Although evidence of bias is generally admissible, admission of relevant evidence is subject to the provisions of Evidence Rule 403. Evidence Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In *Lerchenstein*, although we emphasized the importance of allowing cross-examination for bias, we concluded that, under the facts of that case, the trial judge could properly exclude evidence of bias where its probative value was outweighed by the danger of unfair prejudice. In *Ler-*

*chenstein,* we concluded that the defense had established the witness' bias extensively. 770 P.2d at 1153.

In this case, the state argues that Charles had clearly established that Allen was biased against Charles and his family. The state contends that allowing Charles to inquire about the pending murder charge against Allen would have resulted in essentially trying that murder charge during the trial of this case, ultimately confusing the jury.

It is true that Charles did establish Allen's bias against him and his family. Allen admitted being biased against Charles and the defense presented witnesses who testified to Allen's dislike of Charles. However, we do not believe that the evidence that Allen had a pending murder charge was cumulative. The pending murder charge gave Allen a different kind of bias or interest in the case that the jury should have been allowed to evaluate. The pending murder charge, which carried a substantial penalty, and would be evaluated and presented by the same prosecutor's office as was prosecuting the case against Charles, could have biased Allen in a different way than bias brought about by mere animosity towards Charles and his family. We believe that this possible bias or interest could have been placed in evidence for the jury to evaluate without creating undue confusion by allowing Charles to ask questions along the lines that he requested. We conclude that Charles was entitled to have the jury evaluate the evidence that Allen was biased because of the pending murder charge.

■ Having reached that conclusion, we asked the parties to brief the issue of whether the failure to admit this evidence might be harmless error. The parties have submitted supplemental briefs and we have carefully reviewed the record. We conclude that the failure to admit the evidence of the pending murder charge was harmless error. Because we believe that the failure to allow cross-examination on Allen's pending murder charge affected Charles' right to confront the witnesses against him, we have applied the "harmless beyond a reasonable doubt" standard of *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

In reviewing the record, we see the state's case as overwhelming. Allen knew Charles well and there is no suggestion of unintentional misidentification. There is also no suggestion that Allen did not have an adequate opportunity to observe Charles, and it is undisputed that Allen was severely wounded by two shotgun blasts. Allen's version of the offense was corroborated by the statements of Szweda and the physical evidence. Charles never testified at trial and presented no substantial defense to the charges other than putting the state to its burden of proof, showing the animosity between Allen and Charles, and hinting at a possible self-defense case which never fully developed. Given the strength of the state's case and the fact that Charles was able to establish Allen's bias against him, we conclude that the failure to admit the evidence that Allen had a pending murder charge was harmless beyond a reasonable doubt.

■ Charles next argues that evidence that Allen killed Lewis was admissible to show Allen's character for violence. We agree with the state that Judge Keene could properly exclude the evidence that Allen killed Lewis on this ground. First, as we have earlier indicated, Charles did not present any substantial evidence which indicated self-defense. Second, Charles was able to establish, through other witnesses, Allen's character for violence. Third, from the offer of proof, it does not appear that the incident where Allen killed Lewis would have been particularly probative of Allen's character for violence. A grand jury refused to indict Allen on the offense, apparently on the theory that Allen acted in self-defense. Bringing in the evidence that Allen had killed Lewis to show Allen's character for violence would have required the court to more fully explore the issues surrounding the killing, creating a trial within a trial, and potentially confusing the jury. We conclude that Judge Keene did not abuse his discretion in

refusing to admit the evidence that Allen had killed Lewis.

■ Charles next argues that Judge Keene erred in admitting both the statement that Szweda made to the dispatcher and the statement that Szweda made to Sgt. Glass. Judge Keene allowed these statements as excited utterances. Alaska Evidence Rule 803(2) states that an excited utterance is: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Excited utterances are admissible as exceptions to the hearsay rule. We have discussed the admission of evidence of excited utterances in *Brandon v. State*, 778 P.2d 221 (Alaska App.1989) and *Lipscomb v. State*, 700 P.2d 1298, 1307 (Alaska App. 1985). Judge Keene could properly find that the statement that Szweda made to the dispatcher was an excited utterance. Szweda made the statement in reporting the assault moments after it happened. Szweda appears to have been in fear for his life. The statement that Szweda made to Sgt. Glass presents a closer question. This statement was made approximately thirty-seven minutes after Szweda reported the shooting, was in response to questions, and was partially tape-recorded. However, Sgt. Glass described Szweda as being "quite shaken" at the time of the interview. Szweda had witnessed one of his relatives apparently murdering another in a house where he was staying. Szweda appears to have concluded, with some reason, that he could be the next victim. We conclude that under these facts, Judge Keene could conclude that Szweda's statements to Sgt. Glass were excited utterances.

■ Charles argues that admission of Szweda's out-of-court statements violated his constitutional right to confront the witness against him. The United States Supreme Court has held that when a statement falls within a "firmly rooted hearsay exception," the confrontation clause does not require a showing of reliability other than that necessary to satisfy the requirements of the hearsay exception. *Bourjaily v. United States*, 483 U.S. 171, 182–83, 107 S.Ct. 2775, 2782–83, 97 L.Ed.2d 144 (1987). Furthermore, there is no reason to doubt the reliability of Szweda's statements. *See Hawley v. State*, 614 P.2d 1349, 1358–59 (Alaska 1980).[1]

■ Charles next argues that in admitting evidence of his flight and instructing the jury on this issue, Judge Keene abused his discretion. After Allen was shot, Charles disappeared. The police conducted a substantial but unsuccessful search for Charles. About two weeks after the shooting Charles turned himself in; he had a serious foot condition requiring medical attention. At Charles' trial, Judge Keene allowed the state to introduce evidence of Charles' disappearance to prove Charles' consciousness of guilt. Judge Keene also gave a jury instruction which indicated that the jury could consider Charles' flight as evidence of his consciousness of wrongdoing.

The resolution of this issue is governed by *Dyer v. State*, 666 P.2d 438, 446–49 (Alaska App.1983). In *Dyer*, we noted that the Alaska Supreme Court had indicated that the probative value of evidence of flight was often weak. *Id. See also Elson v. State*, 659 P.2d 1195, 1201 n. 21 (Alaska 1983); *Bargas v. State*, 489 P.2d 130, 133 (Alaska 1971). Therefore, evidence of flight should be received with caution. However, we indicated that evidence of flight, like other evidence, was admissible if the probative value of that evidence outweighed the danger of unfair prejudice. A.R.E. 403. We concluded in *Dyer* that the trial judge did not abuse his discretion in admitting evidence of flight. We reach a similar conclusion in this case. Charles' flight following the shooting of Allen was

---

1. Charles points out that much of Szweda's statements concerned what he heard rather than what he saw. However, what Szweda heard is admissible in evidence. The fact that some of Szweda's conclusions were based on what he heard rather than what he saw was presented with sufficient clarity so that the jury could evaluate the weight to give Szweda's statements. We do not believe that the fact that Charles was not able to cross-examine Szweda made admission of this testimony sufficiently problematical to violate the confrontation clause.

evidence of his consciousness of guilt. To the extent that there were other possible explanations for Charles' flight, these explanations could be pointed out by his counsel. We conclude that Judge Keene did not err in admitting evidence of Charles' flight and in instructing the jury on this issue.[2]

■ Charles next argues that Judge Keene erred in refusing to grant his motion for a psychological evaluation to determine his competence to stand trial. Some background information is necessary to understand our disposition of this issue. Charles' case first came to trial in October 1986. Following jury selection, but prior to opening statements, Charles complained to Judge Keene that he had lost confidence in his court-appointed attorney and requested a change of counsel. After a lengthy hearing, Judge Keene discharged counsel and declared a mistrial. Judge Keene set a new trial date for January 27, 1987. At calendar call on January 22nd, Charles' new defense counsel told Judge Keene he was ready for trial. However, when the court convened for trial on the 27th, Charles' counsel moved for the psychological evaluation. Judge Keene denied the motion.

Whenever there is good cause to believe that an accused may be incompetent to stand trial, the trial court has a duty to order a psychological examination. *Leonard v. State*, 658 P.2d 798, 799 (Alaska App.1983). In moving for a continuance, Charles' counsel pointed out that he had had a great deal of difficulty working with Charles and that Charles was very uncooperative. The attorney thought that Charles' uncooperativeness might have a psychological basis. Judge Keene pointed to Charles' history of being uncooperative with attorneys, and considered that this was not new information and did not reflect on Charles' competency to stand trial. Judge Keene concluded that there was no basis to question Charles' competency to stand trial based on the information that counsel presented.

There is nothing in the record which would indicate that Charles was incompetent to stand trial. If Charles were incompetent to stand trial, counsel was not precluded from obtaining a psychological examination following trial. We conclude that Judge Keene did not abuse his discretion in finding that there was no basis to order a psychological examination.

■ Charles next argues that the trial court erred in denying his motion for a new trial based on newly discovered evidence. Alaska R.Crim.P. 33. Charles also invokes Criminal Rule 35.1, dealing with post-conviction relief. In his motion requesting a new trial, Charles alleged that Allen received favorable treatment from the district attorney's office in the disposition of his murder case. Charles pointed out that, before the state presented the case to the grand jury, the state reduced the charges against Allen to manslaughter. The district attorney also contacted Allen's attorney to determine whether Allen had any relevant evidence which needed to be presented to the grand jury. The grand jury ultimately decided not to indict Allen on any charges. Charles argues that Allen received favorable treatment from the district attorney's office and that this favorable treatment biased Allen's testimony in favor of the state and against Charles.

To obtain a new trial based on newly discovered evidence, or under Criminal Rule 35.1, Charles was required to establish, among other things, that the new evidence was not merely cumulative or impeaching, that it was material, and that the evidence was such as would probably produce an acquittal. *Salinas v. State*, 373 P.2d 512, 514 (Alaska 1962). As we have indicated, Charles should have been able to introduce evidence of the pending murder charge against Allen to show Allen's possible bias or interest toward the state. However, we concluded that the failure of the trial judge to allow Charles to present this information was harmless error. The kind of information which Charles was attempt-

---

**2.** For the first time on appeal, Charles raises the argument that evidence of his flight violated his right against self-incrimination. Admission of

evidence of Charles' flight did not constitute plain error. *See Dyer v. State,* 666 P.2d 438, 446–48 (Alaska App.1983).

ing to develop in his post-conviction relief action would have been cumulative of the information which he could have presented at trial. We see no reasonable possibility that the development of this information would have changed the result in this case. We conclude that Judge Keene did not err in denying Charles' motion for post-conviction relief.

 Charles next argues that his sentence of twenty years of imprisonment was excessive. At the time of Charles' offense, attempted murder was a class A felony. Former AS 11.31.100(d)(1). As a first felony offender who possessed a firearm, used a dangerous instrument, or inflicted serious physical injury, Charles faced a presumptive sentence of seven years. AS 12.-55.125(c)(2). The presumptive sentence for a second felony offender was ten years, and the presumptive term for a third felony offender was fifteen years. The maximum sentence was twenty years.

In arguing that his sentence is excessive, Charles points to *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981), where this court stated that, "Normally a first offender should receive a more favorable sentence than the presumptive sentence for a second offender. It is clear that this rule should be violated only in an exceptional case." Charles points out that his sentence of twenty years of imprisonment is far in excess of the ten-year presumptive term for a second felony offender. The state points out that under current law, Charles' attempted murder offense would be an unclassified felony with a sentencing range of between five to ninety-nine years. AS 11.-31.100(d)(1); AS 12.55.125(b). The state argues that under current law, Charles would be facing a benchmark sentence similar to those approved for other unclassified felonies such as second-degree murder. The state argues that under current law

Charles would face a benchmark sentence of twenty to thirty years. *Page v. State*, 657 P.2d 850, 855 (Alaska App.1983) (establishing benchmark sentence for a second-degree murder). Although the state recognizes that Charles is entitled to be sentenced under the penalty provisions in effect at the time he committed his crime, the state points out that subsequent changes in sentencing statutes can be "highly persuasive" in evaluating sentences imposed under former law. *Nix v. State*, 653 P.2d 1093, 1100 (Alaska App.1982).

In sentencing Charles, Judge Keene found that four statutory aggravating factors applied:

1. a person, other than an accomplice, sustained physical injury as a direct result of the defendant's conduct, AS 12.55.155(c)(1);

2. the defendant's conduct during the commission of the offense manifested deliberate cruelty to another person, AS 12.55.155(c)(2);

3. the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, disability, ill health, or extreme youth or was for any other reason substantially incapable of exercising normal physical or mental powers of resistance, AS 12.55.-155(c)(5);

4. the conduct constituting the offense was among the most serious included in the definition of the offense. AS 12.55.155(c)(10).

Charles argues that Judge Keene erred in finding the existence of these aggravating factors. We have reviewed Charles' arguments concerning the aggravating factors and conclude that Judge Keene did not err in finding the existence of these aggravating factors.[3]

---

**3.** Judge Keene's findings on one of the aggravating factors is worthy of further comment. Judge Keene found that Allen was "particularly vulnerable or incapable of resistance." Charles points out that at the time Allen was shot, Allen was not particularly vulnerable or incapable of resistance "due to advanced age, disability, ill health, or extreme youth or was for any other

reason substantially incapable of exercising normal physical or mental powers of resistance[.]" However, we affirm Judge Keene's finding that this aggravating factor existed for two reasons. First, at the time Charles fired the second shot at Allen, Allen was particularly vulnerable. Second, it appears that Judge Keene's ultimate sentence was based upon the totality of the circum-

In sentencing Charles, Judge Keene relied on several factors in concluding that this was a particularly serious offense and that Charles was a particularly dangerous offender. Judge Keene placed primary emphasis on the offense itself. Charles deliberately assaulted Allen with a shotgun. There was no apparent provocation other than a history of bad feelings between the two men. Charles announced that he was going to kill Allen, and then shot Allen as he attempted to run away. When Allen fell, he asked Charles what he intended to do, and Charles told him that he intended to kill him. Charles went over to Allen and shot him again at close range. After threatening to kill Szweda, Charles left the residence, apparently believing that Allen was dead. It appears to be a mere fortuity that Allen lived. As it is, Allen will suffer serious permanent disability from the assault.

Judge Keene also emphasized that Charles had a significant misdemeanor record and other verified incidents of criminal behavior which did not result in criminal prosecution. Judge Keene concluded that Charles was a particularly dangerous offender and imposed the twenty-year sentence.

In *Pruett v. State*, 742 P.2d 257, 264 (Alaska App.1987), (citations omitted) we observed:

> Sentences of ten years or more for conduct equivalent in seriousness to class A felonies under current law have generally been based on isolation as a goal of sentencing and have been reserved for those with a proven record of recidivism, *or those whose conduct involved premeditated attempts to kill or seriously injure.*

(Emphasis supplied.) Judge Keene's finding that Charles' conduct involved a premeditated attempt to kill Allen is abundantly supported by the record. Therefore, Judge Keene could properly classify Charles' offense as one of those exceptional cases which would justify a maximum

sentence of twenty years for a first felony offender. We accordingly conclude that the sentence was not clearly mistaken.

■ Charles raises one further issue which we must consider. In concluding the sentencing proceeding, Judge Keene stated:

> The defendant is hereby committed to the care and custody of the Commission of the Department of Corrections for a period of twenty years. Any defendant who has received a sentence of forty-five days or more may appeal a sentence on the grounds that it's excessive. The sentence is ... an aggravated presumptive sentence, and the defendant is not eligible for parole.

Charles interprets Judge Keene's remarks as restricting his parole for the entire period of his sentence. Charles recognizes that AS 12.55.115 gives the court discretion to restrict the eligibility of a prisoner for discretionary parole. However, Charles points out that before restricting parole eligibility the judge is required to make specific findings. In *Spencer v. State*, 642 P.2d 1371, 1377 (Alaska App.1982) (footnote omitted), we stated:

> Where an extended parole eligibility term is imposed, the court must specifically address the issue and set out with particularity its reasons for concluding that the parole eligibility term prescribed by statute would be insufficient to protect the public and insure the defendant's reformation.

*See also Lawrence v. State*, 764 P.2d 318 (Alaska App.1988).

The state recognizes that Judge Keene's remarks concerning the restriction on parole are unclear. The state points out that Judge Keene may have believed that Charles was ineligible for parole because he was serving an aggravated presumptive sentence. The state also points out that, under the law, if there is no judicial restriction on parole, Charles must serve his seven-year base presumptive term plus twen-

---

stances which indicated that this was a particularly serious offense. Judge Keene articulated why he believed it was a serious offense. It is

therefore pointless to remand this case for further proceedings.

ty-five percent of the enhanced presumptive term before he is eligible for parole. AS 33.16.090(b) and (c); AS 33.16.100(c). The state concedes that on this record Charles is entitled to have his sentence reconsidered by the superior court.

When Judge Keene stated, "The sentence is ... an aggravated presumptive sentence, and the defendant is not eligible for parole" it was not clear whether he intended to restrict Charles' parole in any manner other than what was required by law because of the imposition of the aggravated presumptive sentence. We agree with Charles that if Judge Keene intended to judicially restrict his parole under AS 12.55.115, his findings were insufficient under *Spencer* and *Lawrence*. Furthermore, under *Lawrence*, it would be difficult to justify restricting Charles' parole for the entire period of his sentence. We have reviewed Charles' sentence on the assumption that Judge Keene did not restrict Charles' parole under AS 12.55.115. However, in light of the ambiguity, on remand the court should either modify Charles' judgment to make it clear that the court did not intend to restrict Charles' parole under AS 12.55.115 or it should conduct another sentencing proceeding.[4]

The conviction is AFFIRMED; the sentence is REMANDED for clarification.

---

**4.** We note that the language which the court used in imposing sentence and in its written judgment is very similar to the language which frequently appears in judgments: "The sentence is presumptive. The defendant is not eligible for parole." This is language which courts have used to indicate that the defendant is serving a presumptive sentence and is not eligible for parole for the presumptive portion of the sentence. This language is not intended to restrict parole under AS 12.55.115. It is possible that this may have been Judge Keene's intent in using the language that he did.