**Diane C. NELSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–5688.

Court of Appeals of Alaska.

Oct. 11, 1996.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for Appellant.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

### OPINION

MANNHEIMER, Judge.

Diane C. Nelson appeals her convictions for third-degree assault. We affirm.

On the afternoon of February 12, 1994, Nelson went to the Sears department store in Fairbanks with her fifteen-year-old cousin, Kenny Matthews. Nelson had a long history of shoplifting; she went to the store because she had a compulsive urge to shoplift.[1] At the Sears store, Nelson began to collect merchandise to steal.

Boanerges Jasso, a plain-clothes Sears loss prevention officer, noticed Nelson's behavior. He radioed this information to Brenden Davis, another plain-clothes loss prevention officer. Davis observed Nelson and Matthews leave the store, each carrying piles of unpaid-for merchandise.

---

**1.** Nelson apparently suffers from a severe personality disorder; her urge to shoplift is a man-    ifestation of this disorder.

Davis followed Nelson and Matthews out of the store and into the parking lot. As Nelson and Matthews got ready to climb into a Ford pickup truck, Davis identified himself as a Sears loss prevention officer and told Nelson that she needed to return with him to the store. While Davis was speaking, Nelson and Matthews urged each other to hurry up and get into the truck. Nelson got into the driver's side of the truck and closed the door.

Davis reached through the driver's side window (which apparently was open) and covered the ignition socket with his hand to prevent Nelson from inserting the key. Nelson climbed out of the passenger side of the truck, causing the stolen merchandise to spill to the ground. Nelson and Matthews began to leave the parking lot on foot, but Davis grabbed Matthews by the arm; the two men struggled and fell to the ground.

During this struggle, Nelson urged Matthews to kick Davis. Then Nelson ran toward Davis and attempted to kick him in the head. Nelson's kick was blocked by Jasso, who had by this time arrived at the scene; he stepped between Nelson and Davis at the last moment and blocked Nelson's foot.

Nelson then climbed back into the truck, put the truck in reverse, and backed up toward Jasso, Davis, and Matthews at a speed of 25 to 30 miles per hour. Davis grabbed Matthews and pulled him out of the truck's path. Nelson narrowly missed the three men.

Nelson then braked, put the truck in drive, and began driving toward the men again. As Nelson drove toward them, the truck's tires spun on the snow and the three men were able to dodge the truck.

After the second pass, Nelson backed up, shifted into drive once again, and began driving toward the men a third time. This time the three men were backed up against a snowbank and could not get out of the truck's path. As Nelson drove into them, Jasso fell back against the snowbank; the truck's bumper struck his chest and the truck's right tire rolled up his leg to the knee, damaging the muscles in his leg. Davis and Matthews also fell to the ground but were not injured.

As Nelson again backed the truck up, Matthews got up from the ground and climbed into the truck. Nelson and Matthews then drove away. Davis and Jasso returned to the store and telephoned the police, describing the truck and reporting the license plate number.

Later that day, the police located Nelson at a Fairbanks hospital, where she had been admitted after cutting her wrists in an apparent suicide attempt. Nelson told the investigating officer that she had decided to kill herself rather than return to jail. She also admitted that she had stolen merchandise from Sears, that she had driven the truck towards the security guards a couple of times, and that she had struck one of them. She explained that she had driven the truck towards the guards in an effort to help Matthews escape from them.

At trial, Nelson testified that she was scared because she did not want to go back to jail for shoplifting. She asserted that she had no desire to assault the Sears employees; she only wanted to retrieve Matthews and then leave the area quickly. Nelson claimed that she did not see the security guards in her path.

In contrast to Nelson's account, both Jasso and Davis perceived that Nelson was trying to drive straight into them. A passerby who observed these events testified at trial that he initially thought some type of abduction was taking place. When he saw Nelson first drive the vehicle toward the men, he thought that she was trying to get Matthews into the truck. This witness then testified that "the second approach of the vehicle left a distinct impression in my mind that the driver ... was trying to run into the individuals, trying to stop that struggle by—by striking those individuals."

Nelson was indicted for second-degree assault under AS 11.41.210(a)(1): intentionally causing physical injury to Jasso by means of a dangerous instrument (her vehicle). She was also charged with third-degree assault under AS 11.41.220(a)(1): recklessly placing Davis in fear of imminent serious physical injury by means of a dangerous instrument

(again, her vehicle).[2] With respect to the assault on Jasso, the jury found Nelson not guilty of second-degree assault but guilty of the lesser offense of third-degree assault under AS 11.41.220(a)(2)—recklessly causing physical injury to Jasso by means of a dangerous instrument. With respect to the assault on Davis, the jury found Nelson guilty of third-degree assault as charged.

On appeal, Nelson asserts that the jury received faulty instructions concerning the elements of third-degree assault. Because Nelson did not object to these instructions in the trial court, she must prove plain error. *See* Alaska Criminal Rule 30(a).

Nelson was convicted under two different theories of third-degree assault. With respect to the charge involving Jasso, the jurors were told that the offense of third-degree assault required them to find:

> that [Nelson] recklessly caused physical injury to [Jasso]; and ... that [she] caused such injury by means of a dangerous instrument, a motor vehicle.

*See* AS 11.41.220(a)(2). With respect to the charge involving Davis, the jurors were told that the offense of third-degree assault required them to find:

> that [Nelson] unlawfully and recklessly placed [Davis] in fear of imminent serious physical injury; and ... that [she] did so

by means of a dangerous instrument, a motor vehicle.

*See* AS 11.41.220(a)(1). These two instructions track the language of the two subsections of the third-degree assault statute. Nevertheless, Nelson asserts that these instructions are defective because they fail to mention an element of "knowing conduct".[3]

Nelson does not claim that there was any dispute concerning her conduct. In fact, Nelson expressly concedes that "[t]here was no dispute as to the conduct [that she] knowingly engaged in, *i.e.*, that she voluntarily started the truck and drove it in the manner described by the various witnesses." Rather, Nelson asserts, the problem with omitting any mention of "knowing conduct" is that the jury might have been confused concerning the culpable mental state that applied to Nelson's awareness of the potential consequences of her actions.

In general, the elements of any crime defined by the Alaska Criminal Code fall into one of three categories: elements that require proof of a particular "result"; elements that require proof of a particular kind of "conduct"; and elements that require proof of a surrounding "circumstance". *See* the legislative commentary to AS 11.81.900(a), found at 1978 Senate Journal, Supp. No. 47

---

**2.** Nelson was also charged with, and convicted of, third-degree theft. Nelson has not appealed her theft conviction.

**3.** Nelson assumes that third-degree assault requires proof of an element of "conduct". That is not self-evident.

Every criminal offense must be premised on some voluntary act or omission of the defendant. *See* AS 11.81.600. In Nelson's case, the voluntary act that underlies her criminal liability is her act of driving the vehicle. But although all criminal liability must be premised on a voluntary act or omission, not all criminal offenses have a "conduct" element. That is, not all crimes are defined in terms of a specific type of conduct.

For example, second-degree assault under AS 11.41.210(b) requires proof that the defendant recklessly inflicted serious physical injury on another person. This offense requires proof of a result (infliction of serious physical injury) and a culpable mental state (the defendant's reckless disregard of the possibility of causing serious physical injury), but the statute does not require proof of any particular form of "conduct".

Seemingly, any voluntary act or omission of the defendant will support criminal liability under this statute, as long as the State proves that the defendant's act caused the proscribed result and that the defendant acted with the specified culpable mental state. *See Guertin v. State,* 854 P.2d 1130, 1130 n. 1 (Alaska App.1993) (while the criminal code categorizes the elements of offenses into "conduct", "circumstances", and "results", a criminal offense need not include an element from each of these three categories).

Nelson was charged with third-degree assault under AS 11.41.220(a)(1) and (a)(2). The offense requires proof that the defendant achieved the prohibited result (infliction of injury, or placing another person in fear) "by means of a dangerous instrument". It is unclear whether the legislature intended for the phrase "by means of a dangerous instrument" to refer to a "circumstance" or to a particular type of "conduct". If a circumstance, the culpable mental state of "recklessly" applies; if a type of conduct, then the culpable mental state of "knowingly" applies. *See* AS 11.81.610(b). The parties have not briefed this question, and Nelson's case does not require us to resolve it.

(June 12), pp. 139–143; *Neitzel v. State*, 655 P.2d 325, 328–330 (Alaska App.1982).

Nelson and the State agree that when AS 11.41.220(a)(1) speaks of "recklessly ... plac[ing] another person in fear of imminent serious physical injury", the statute is specifying a result (that another person is placed in fear of imminent serious physical injury) and a culpable mental state (the defendant must act recklessly with respect to the result). Similarly, when AS 11.41.–220(a)(2) speaks of "recklessly ... caus[ing] physical injury to another person", the statute is specifying a result (the infliction of physical injury) and a culpable mental state (again, recklessness). In both instances, the element of recklessness requires proof that

> [the defendant was] aware of and consciously disregard[ed] a substantial and unjustifiable risk that the result [would] occur[.]

AS 11.81.900(a)(3).

■ As noted above, the challenged jury instructions in Nelson's case closely track the language of the two subsections of AS 11.41.220(a). Nelson argues, however, that the jury might have been misled by the wording of the statute. Nelson suggests that the jury might have thought that third-degree assault was proved if Nelson (1) drove her truck "recklessly" and, in so doing, (2) either inflicted injury on Jasso or placed Davis in fear of imminent serious physical injury—even though Nelson may have had no inkling that this would be the result of her driving. That is, the jury might have failed to understand the need for proof that Nelson was aware of and consciously disregarded the risk of causing these two results.

We find Nelson's suggestion implausible. The two challenged jury instructions do not speak of "reckless driving" or any equivalent

phrase. Instead, the instructions asked the jury to determine whether Nelson "recklessly caused physical injury" to Jasso and whether she "recklessly placed [Davis] in fear of imminent serious physical injury". In other words, the culpable mental state "recklessly" was positioned directly in front of the result it applied to. Moreover, the jury was correctly instructed that the State had to prove Nelson's awareness of the risk. Instruction 29 informed the jury that a person acts "recklessly" with respect to a result

> when [the] person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur[.]

■ As already noted, Nelson did not object to these instructions in the trial court; she must therefore prove plain error. In the context of jury instructions, "[p]lain error exists when [the] instruction obviously creates a high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice." *Aviation Associates, Ltd. v. TEMSCO Helicopters, Inc.*, 881 P.2d 1127, 1131 n. 7 (Alaska 1994) (quoting *Ollice v. Alyeska Pipeline Service Co.*, 659 P.2d 1182, 1185 (Alaska 1983)). We find no plain error here.[4]

■ Nelson's final contention is that the trial judge should not have given the following instruction:

> The flight of a person immediately after the commission of a crime is not sufficient in

itself to establish her guilt, but is a fact which, if proved, may be considered by you in the light of all other facts in deciding the question of her guilt or innocence. The weight to which such evidence is entitled is a matter for the jury to determine.

Nelson argues that any evidence that she fled the scene was only "nominally proba-

---

4. At its heart, Nelson's argument seems to be that it is inherently misleading for the culpable mental states of "intentionally" or "recklessly" ever to be linked to a verb in a jury instruction, since this might lead the jury to believe that these culpable mental states applied to conduct. But the legislature used adverbs to define these culpable mental states. When the criminal code uses "intentionally" and "recklessly", these words are always linked to a verb. For example, the statutes that define these culpable mental

states begin with the phrases, "a person *acts* 'intentionally' " and "a person *acts* 'recklessly' ". *See* AS 11.81.900(a)(1) and (a)(3). English syntax demands such usage.

We agree with the State that, in the absence of unusual circumstances, jurors who are asked to decide whether a defendant has "intentionally" or "recklessly" caused some result will approach their task correctly if they are told the statutory meaning of "intentionally" or "recklessly".

tive", since she had already decided to flee the Sears parking lot (to escape with the stolen goods) before any of the assaultive conduct occurred. Because Nelson sees little or no probative force in her act of flight, she argues that the trial court's decision to highlight this piece of evidence was "highly prejudicial" with respect to the assault offenses.

We disagree with Nelson's view of the evidence. With regard to the second-degree assault charge against Nelson, the major question litigated at trial was whether Nelson intended to injure Jasso by striking him with her vehicle. Despite the fact that thieves can be expected to flee the scene of their thefts, it is also plausible that a thief would nevertheless stop and render assistance if she realized that she had struck someone with her vehicle. Thus, the fact that Nelson did not stop is at least some indication that she intended to strike Jasso. *See* Evidence Rule 401 (evidence is relevant if it has "any tendency to make the existence of any [material] fact more or less probable than it would be without the evidence"). Moreover, as noted in footnote 2, Nelson was being tried concurrently for third-degree theft. Evidence of her flight was obviously relevant to the jury's consideration of that charge.

Given the fact that Nelson's act of flight was relevant, the trial judge did not abuse her discretion when she instructed the jury on how to approach this evidence. This court has held that a trial judge may properly instruct the jury that evidence of a defendant's flight can be considered in the same manner as other evidence in determining a defendant's guilt or innocence. *Charles v. State*, 780 P.2d 377, 383 (Alaska App.1989); *Lipscomb v. State*, 700 P.2d 1298, 1309 & n. 11 (Alaska App.1985). The holdings of *Charles* and *Lipscomb* are based on *Dyer v. State*, 666 P.2d 438, 449 (Alaska App.1983). In *Dyer*, this court upheld a flight instruction almost identical to the instruction given in Nelson's case. This court reasoned:

> The instruction merely tells the jury that it can consider evidence of flight if it wishes and that it should give such evidence the weight which it deems appropriate. Although we are not sure any instruction on

flight was necessary, we find that the court did not err in giving this instruction.

*Dyer*, 666 P.2d at 449.

Nelson argues that *Dyer*, *Charles*, and *Lipscomb* should be re-evaluated. She asserts that it is inherently unfair for a trial judge to emphasize any part of the evidence. *See Fenelon v. State*, 594 So.2d 292, 294 (Fla.1992) ("The flight instruction ... invade[s] the province of the jury by commenting on the evidence or indicating what inferences may be drawn from it.").

We disagree with Nelson and with *Fenelon*, the Florida case she relies on. Both during trial and at the close of trial, judges frequently (and properly) give juries instruction on various aspects of the evidence they have heard. These instructions can clarify the proper uses of the evidence, or caution against potential improper uses of the evidence, or both. Such instructions do not "invade the province of the jury". We find no reason to alter the rule adopted in *Charles* and *Lipscomb*.

The judgement of the superior court is AFFIRMED.