In the Matter of A.S.W. and E.W., Minors Under the Age of Eighteen (18) Years,

D.W., Appellant,

v.

STATE of Alaska, Appellee.

No. S–4181.

Supreme Court of Alaska.

May 29, 1992.

Keenan Powell, Anchorage, for appellant.

Lisa B. Nelson, Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

D.W. appeals the superior court's determination that his two daughters, A.S.W. and E.W., are "children in need of aid." He maintains that the superior court erred in admitting a videotaped interview with A.S.W. under the "catch-all" exception to the hearsay rule because the videotape lacks the necessary guarantees of trustworthiness. He also contends that his daughter's videotaped statement unreasonably curtailed his constitutional right to confront his accuser. Because we conclude that the superior court properly admitted A.S.W.'s videotaped interview, we affirm the court's assumption of jurisdiction over the children.

### I.

D.W. and J.H. have two daughters, A.S.W. and E.W. J.H. first suspected that her husband might have abused A.S.W. in November 1988, shortly after she and her husband separated. When she told four-year-old A.S.W. that her father would not be living with them for a while, A.S.W. asked her whether this meant that A.S.W.'s father would not hurt her any more. This question prompted J.H. to speak further with A.S.W. and, over the next few days, A.S.W. described how her father had sexually abused her.

J.H. reported the alleged abuse to the Alaska State Troopers.[1] On January 13, 1989, A.S.W. was interviewed by Trooper Theresa Stewart and social worker Sandy Csaszar. Prior to the videotaped interview, J.H. introduced A.S.W. to the officers and provided them with some basic biographical information. J.H. was not present during the actual interview.

The videotape lasts approximately one hour. In the interview, A.S.W. describes when, where and how her father abused her. In child-like terms she describes how her father attempted penile penetration, performed cunnilingus, ejaculated on her,

and put his finger and other objects in her anus. She describes the places in her house where these incidents took place. She connects incidents of abuse to other events in her life: her third birthday; the time she had a rash in her vaginal area which required medication; the birth of her little sister; and when she got her "new" bed. These incidents apparently took place during the summer of 1987 when A.S.W. was three. Although A.S.W. is confused at times as to how old she was when some of the alleged abuse occurred, she states clearly that the incidents with her father occurred after the incidents with the teenage boys and that the abuse did not continue after she turned four. The interviewers asked her questions in an open-ended, nonleading manner. However, there was no element of cross-examination. The interviewers did not challenge A.S.W.'s statements or ask whether she had been coached.

In January 1989, the state filed a Petition for Adjudication of Child in Need of Aid. Before the adjudication hearing, the guardian *ad litem* moved for a protective order precluding the use of A.S.W. as a witness at the hearing. In granting the motion, the court found that A.S.W. was "unavailable" as a witness because she suffered from arrhythmia. The court was concerned that the trauma of testifying would aggravate that condition.

The State moved to admit A.S.W.'s videotaped statement under a variety of theories. Both parties briefed this issue before the adjudication hearing. At the hearing, the discussion focused on whether the videotaped statement exhibited the "circumstantial guarantees of trustworthiness" required under Alaska Rule of Evidence 804(b)(5). The State suggested that the court view the tape itself to determine whether the appropriate guarantees were present. All parties agreed to this procedure.

After viewing the tape, the court admitted the statement. The trial judge specifi-

---

1. A.S.W. had previously been molested by two teenage boys, D.C. and D.R. This abuse was also reported to the Alaska State Troopers. D.C. confessed to the abuse, but D.R. denied that he sexually abused A.S.W.

cally stated that he believed that the child was actually relating her own experiences and that she had not been coached. In addition to the videotape, the State presented testimony from J.H., A.S.W.'s pediatricians and A.S.W.'s therapist. J.H. testified that she had not coached A.S.W. in any way.

D.W. denied that he had ever sexually abused his daughter. He testified that he and J.H. were in the midst of an acrimonious divorce. He stated his belief that J.H. had coached A.S.W. to tell this story so that J.H. would have grounds for divorce consistent with her religious beliefs. He stated that J.H. had manufactured these charges after he refused to sign dissolution papers.

At the conclusion of the adjudication hearing, the court ruled that A.S.W. and her sister E.W. were "children in need of aid." The trial judge based his decision on his finding that A.S.W. had been sexually abused by D.W. and that E.W. was at substantial risk of being sexually abused. Consequently, the court assumed jurisdiction over the two girls pursuant to AS 47.10.010.[2]

A dispositional hearing was held in December 1989. The court gave the Department of Health and Human Services temporary custody of the children and returned them to their mother's care. The court directed D.W. to have no contact with the children except through arrangements with the Department.

## II.

D.W. claims that the superior court abused its discretion in admitting the videotaped interview with his daughter under Alaska Rule of Evidence 804(b)(5). Although D.W. does not challenge the basis of the trial court's finding that A.S.W. was "unavailable" to testify at trial, he argues that the videotape does not provide the circumstantial guarantees of trustworthiness which would justify admitting it into evidence.[3] We disagree.

■ The residual exceptions to the hearsay rules, embodied in Alaska Rule of Evidence 803(23) and Alaska Rule of Evidence 804(b)(5), permit the trial judge to admit hearsay statements which do not fall within one of the traditional exceptions.[4] Gen-

---

2. Alaska Statute 47.10.010 provides, in pertinent part:

**Jurisdiction.** (a) Proceedings relating to a minor under 18 years of age residing or found in the state are governed by this chapter ... when the court finds the minor

. . . . .

(2) to be a child in need of aid as a result of

. . . . .

(C) the child having suffered substantial physical harm or if there is an imminent and substantial risk that the child will suffer such harm as a result of the actions done by or conditions created by the child's parent, guardian, or custodian or the failure of the parent, guardian, or custodian adequately to supervise the child;

(D) the child having been, or being in imminent and substantial danger of being, sexually abused either by the child's parent, guardian, or custodian, or as a result of conditions created by the child's parent, guardian or custodian, or by the failure of the parent, guardian, or custodian adequately to supervise the child;

. . . .

3. The admission of evidence is committed to the trial court's discretion and its rulings will not be overturned on appeal in the absence of an abuse

of discretion. *Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980).

4. Evidence Rule 804(b)(5) (declarant unavailability required) provides, in part, that an out-of-court statement is admissible if it is:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Evidence Rule 803(23) (availability of declarant immaterial) contains the identical wording.

erally, the residual exceptions are to be used only on rare occasions where the court finds the evidence "to have guarantees of trustworthiness equivalent to or exceeding the guarantees reflected by the presently limited exceptions, and to have a high degree of probativeness and necessity." Alaska R.Evid. 803(23) Commentary; *see also Brandon v. State,* 778 P.2d 221, 227 (Alaska App.1989) (holding that the residual exceptions to the hearsay rule are to be used rarely).

The rule against the admission of hearsay stems from the long established belief that cross-examination is the best vehicle for discovering the truth. 5 Wigmore, *Evidence* § 1362 (Chadbourn rev. 1974); *Ohio v. Roberts,* 448 U.S. 56, 64–65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). The traditional exceptions to the hearsay rule form two general classes: (1) those statements which are so inherently reliable that cross-examination is thought unnecessary (Rule 803); and (2) those statements which are sufficiently reliable to be admitted in light of their great evidentiary value when the declarant is unavailable (Rule 804).

The out-of-court statements of a child in proceedings where abuse is alleged are often quite necessary to the administration of justice.[5] Therefore, if the child is unavailable to testify,[6] the courts should admit the statements if the statements are sufficiently reliable.

We recently held that a child's out-of-court identification of her alleged abuser was admissible under Evidence Rule 803(23) for the purpose of defeating a summary judgment motion. *Broderick v. King's Way Assembly of God Church,* 808 P.2d 1211 (Alaska 1991). In *King's Way,* a child told her mother that a church day-care worker had sexually abused her. The mother and her boyfriend took the child to the church nursery where the child identified the defendant. *Id.* at 1213–14. The child's identification was the only evidence linking the defendant to the abuse. The trial court ruled that the mother's deposition and affidavit testimony of her daughter's declaration of abuse were inadmissible as hearsay and granted the defendants' motion for summary judgment in the subsequent civil damages action. *Id.* We reversed.

In determining that the child's statement exhibited sufficient guarantees of trustworthiness, we relied on the following factors: (1) the spontaneity of the child's statements; (2) the age of the child; (3) the use of "childish" terminology; and (4) the consistency of statements. *Id.* at 1219–20. However, we emphasized that these factors were not all inclusive nor should they be applied mechanically. *Id.* at 1219 n. 18 (quoting *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)).[7] We

---

5. As one commentator observes:

   The unusually compelling need for children's hearsay statements in sex abuse cases is demonstrated primarily by the fact that the statements often constitute the only proof of the crime. Physical corroboration is rare, for the crimes committed are predominantly nonviolent in nature. Most crimes consist of petting, exhibitionism, fondling, and oral copulation, activities that do not involve forceful physical contact. The lack of physical corroboration can also be attributed to the fact that most children, for a variety of reasons, do not resist their attackers and succumb easily.

   Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 83 Colum.L.Rev. 1745, 1749–50 (1983) (footnote omitted).

6. A witness is "unavailable" as defined in Evidence Rule 804(a) when the witness:

   (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the statement; or

(2) persists in refusing to testify concerning the subject matter of the statement despite an order of the court to do so; or

(3) establishes a lack of memory of the subject matter of his statement; or

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) is absent from the hearing and the proponent of the statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), (4), or (5), of this rule, his attendance or testimony) by reasonable means including process.

In this case, the court found A.S.W. "unavailable" under subsection (4).

7. In *Wright,* the United States Supreme Court cited a number of factors which relate to whether hearsay statements made by a child witness in criminal sexual abuse cases are reliable: spontaneity and consistent repetition; mental

instructed the trial court to conduct a searching review of the facts in each individual case before admitting out-of-court statements under either Evidence Rule 803(23) or Evidence Rule 804(b)(5).[8] *Id.* at 1219 n. 17.

█ In the present case, we agree with the trial court's determination that A.S.W.'s videotaped interview exhibits sufficient guarantees of trustworthiness.[9] The four-year-old's statements on the videotape are spontaneous and natural. She used child-like terminology to describe graphic sexual behavior and tied these incidents to events that would be prominent in the mind of a small child. She distinguished between the earlier abuse by the teenage boys and the abuse by her father. Furthermore, the interviewers conducted themselves in a neutral fashion and did not extract her statements.

The remainder of the requirements for Evidence Rule 804(b)(5) are easily satisfied in this case and D.W. does not attempt to contest them. We conclude, therefore, that A.S.W.'s statements are admissible under Evidence Rule 804(b)(5).

state of the declarant; use of terminology unexpected of a child of similar age; and lack of motive to fabricate. *See also Murray v. State,* 770 P.2d 1131, 1136–37 (Alaska App.1989). In *Wright,* the Supreme Court observed that "the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." *Wright,* 497 U.S. at ——, 110 S.Ct. at 3150.

**8.** We observed in *King's Way* that the language and purpose of Evidence Rule 803(23) and Evidence Rule 804(b)(5) are "identical." *King's Way,* 808 P.2d at 1218 n. 17. However, we wish to clarify that if the declarant is available but does not testify, hearsay evidence should be admitted under Evidence Rule 803(23) only when the guarantees of trustworthiness are high or when the reliability of the evidence cannot be tested by cross-examination at that stage in the proceedings.

In *King's Way,* the trial court granted the defendants' summary judgment motion after ruling that the hearsay identification was inadmissible. The court was required to draw all inferences in favor of the plaintiff and to disregard all countervailing evidence, including cross-examination. Since cross-examination was thus not a consideration, the court should have admitted the out-of-court statement under Evidence Rule 803(23) for the limited purpose

# III.

D.W. next asserts that the opportunity to cross-examine and confront his accuser, in this case a four-year-old child, was essential to afford him due process of law.

█ The Confrontation Clause of the Sixth Amendment of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." The Alaska Constitution art. I, § 11, also secures the right of confrontation for criminal defendants. Alaska Const. art. I, § 11. Neither provision specifically applies to civil proceedings. A civil litigant's right to confront witnesses is instead founded upon notions of procedural due process. *Thorne v. State, Dep't of Public Safety,* 774 P.2d 1326, 1332 (Alaska 1989). Therefore the question is not whether D.W. is guaranteed a constitutional right to confront adverse witnesses, but whether due process, in this case, necessitates that D.W. be afforded the right to cross-examine his daughter.

of deciding whether to grant or deny the summary judgment motion. However, we emphasize that the child's out-of-court identification would not have been admissible at trial under Evidence Rule 803(23) because it is not so inherently reliable that cross-examination is unnecessary. The identification would only be admissible at trial if the child declarant were found to be "unavailable" under Evidence Rule 804(a). Alaska R.Evid. 804(b)(5).

**9.** Although D.W. maintains that the circumstances surrounding the making of the videotape are suspect, his arguments are unconvincing. He claims that J.H. coached A.S.W. to accuse him of sexual abuse. However, he offers no evidence of coaching beyond the fact that he and J.H. were involved in an acrimonious divorce. He also maintains that A.S.W.'s videotaped statement was made after a "pre-videotape interview" where the mother was present and encouraged A.S.W. to tell the "coached" story to the interviewers. However, D.W. failed to elicit any evidence supporting this theory during his cross-examination of the trooper who conducted the interview. Furthermore, D.W. elected neither to depose the social worker who was present at the interview nor to call her for trial. The trial judge weighed all the evidence presented at trial and concluded that A.S.W. had not been coached.

Child in Need of Aid Rule 1(f) provides in part that:

> Where no specific procedure is prescribed by these rules, the court may proceed in any lawful manner, including application of the Civil Rules, applicable statutes, the Alaska and United States Constitutions or the common law. Such a procedure may not be inconsistent with these rules and may not unduly delay or otherwise interfere with the unique character and purpose of child in need of aid proceedings.

CINA Rule 1(f). Child in Need of Aid ("CINA") proceedings are designed to protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well-being. AS 47.05.-060; *In re J.R.B. and T.W.G.*, 715 P.2d 1170, 1173 (Alaska 1986). These confidential proceedings are not concerned with imposing either criminal penalties or civil liability on the alleged abuser. The focus of a CINA proceeding is not whether conduct constituting child abuse occurred, but whether the child's well-being is imperiled.

In addition, CINA proceedings are tried before a judge, not a jury. While, in a jury trial, the admission of improper evidence may pose a threat to the accuracy of the outcome, in a CINA proceeding, the judge is more capable of attributing the proper weight to the evidence presented by the parties.

■ We have previously noted that "[d]ue process is flexible, and the concept should be applied in a manner which is appropriate in terms of the nature of the proceeding." *In re C.L.T.*, 597 P.2d 518, 523 (Alaska 1979) (quoting *Otton v. Zaborac*, 525 P.2d 537, 539 (Alaska 1974)). In CINA proceedings, the balance between children's rights and parents' rights must be weighted in favor of protecting the child. Accordingly, we hold that, in the adjudicatory phase of a CINA proceeding,

the alleged abuser's due process right to cross-examine the child is adequately protected by the unavailability and reliability requirements of Evidence Rule 804.[10]

We are mindful that proceedings to terminate parental rights implicate fundamental interests comparable with those at stake in a criminal prosecution. *See J.R.B.*, 715 P.2d at 1173–74; *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In *J.R.B.*, we held that the discretionary use of hearsay evidence in the *dispositive* phase of a termination proceeding does not violate the fundamental liberty interest of the parent. *J.R.B.*, 715 P.2d at 1174; CINA Rule 17(e). Similarly, we do not believe that the admission of hearsay evidence under Evidence Rule 804 in the *adjudicative* phase of termination proceedings is inconsistent with fundamental fairness. Before the court may terminate parental rights, the department must prove "by clear and convincing evidence that ... the parental conduct that caused the minor to be adjudicated a child in need of aid is likely to continue unless parental rights are terminated...." CINA Rule 18(c)(1). Completely uncorroborated hearsay evidence will not satisfy this high evidentiary standard. Therefore we conclude that a parent's constitutional right to due process is adequately protected by our holding even if termination proceedings are the eventual outcome. *See In re E.P.*, 167 Ill.App.3d 534, 118 Ill.Dec. 321, 325–26, 521 N.E.2d 603, 607–08 (1988) (holding that the admission of hearsay evidence in termination proceedings does not deprive a parent of his or her due process right to confrontation when the out-of-court statements are sufficiently corroborated by other evidence).

## IV.

■ A trial court's finding that "a child is in need of aid" under AS 47.10.010

---

**10.** In the *dispositional* phase of CINA proceedings, CINA Rule 17(e) authorizes the use of hearsay evidence without a showing of unavailability.

Hearsay which is not otherwise admissible under a recognized exception to the hearsay rule may be admissible at the disposition

hearing and in review of a disposition order if the hearsay is probative of a material fact, has circumstantial guarantees of trustworthiness, and the appearing parties are given a fair opportunity to meet it.
CINA Rule 17(e).

may only be overturned if "this court 'is left with the definite and firm conviction that a mistake has been made.'" *A.H. v. State*, 779 P.2d 1229, 1231 (Alaska 1989) (quoting *E.J.S. v. State, Dep't of Health & Social Serv.*, 754 P.2d 749, 750 n. 2 (Alaska 1988)); *W.M.F. v. State*, 723 P.2d 1298, 1304 (Alaska App.1986). In this case, the superior court found that A.S.W. had been sexually abused by her father and that E.W. was at substantial risk of being sexually abused. It based this finding on A.S.W.'s videotaped statement and J.H.'s testimony. Since we believe the trial court properly admitted the videotaped statement, we find that the court's determination that A.S.W. and E.W. are "children in need of aid" is not clearly erroneous and is supported by sufficient evidence.

AFFIRMED.