**In the Matter of T.P., A Minor Under the Age of Eighteen (18) Years.**

**L.P., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. S–4488.**

Supreme Court of Alaska.

Sept. 25, 1992.

Mary C. Geddes and Susan Orlansky, Asst. Public Defenders, and John B. Salemi, Public Defender, Anchorage, for appellant.

Richard P. Sullivan, Jr., Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Barbara Malchick, Office of Public Advocacy, Anchorage, Guardian ad litem.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

In this CINA appeal, L.P. challenges the trial court's ruling that his daughter, T.P., is a "child in need of aid." He maintains that the trial court erred in admitting his daughter's hearsay statements under Alaska Rule of Evidence 804(b)(5), arguing that T.P. was not "unavailable" and that her statements lacked the necessary guarantees of trustworthiness. He also claims that the trial court improperly relied on a psychologist's testimony and report in making its CINA ruling. Finally, L.P. argues that the court's finding is not supported by a preponderance of the evidence.

We affirm the trial court on all issues.

### I. *Facts and Proceedings*

In November 1989, the Alaska Department of Health and Human Services (the Department) assumed emergency jurisdiction over T.P., a six-year-old child. The Department also initiated Child In Need of Aid (CINA) proceedings under AS 47.10.-010(a)(2)(D).[1] The Department's petition alleged that T.P. had told a social worker that her father had touched her between her legs and hurt her.

An adjudication hearing was held in October 1990. At the commencement of the hearing, Judge Katz addressed two preliminary issues. First, L.P. challenged T.P.'s competency. After an examination of T.P., the court found that T.P. was "minimally competent."[2] Second, the Department and the guardian *ad litem* sought to exclude L.P. from the courtroom during T.P.'s testimony pursuant to CINA Rule 3(c) which

provides that a parent may be excluded during the testimony of a child witness "to protect the child from material psychological harm."

The Department offered the testimony of Dr. Karen Senzig to show that T.P. would suffer "material psychological harm" if she testified in her father's presence. L.P. objected in advance to any testimony by Dr. Senzig which would indicate that she considered T.P. to exhibit symptoms typical of sexually abused children. The court agreed that Dr. Senzig should not state her opinion as to whether T.P. had been sexually abused.

The Department qualified Dr. Senzig as an expert witness in "general psychological evaluation." Dr. Senzig testified that she had observed T.P. during a two and one-half hour evaluation in July 1990. At that time, she did not have any background information concerning T.P. and she did not know why the Department had sent T.P. to be evaluated. During the evaluation, she administered several psychological tests and conducted a clinical interview. Dr. Senzig testified that T.P. suffered from serious delays in intellectual, visual/motor and self-concept development. She also testified, in general terms, that a child at T.P.'s stage of development could easily be confused by complex questions and that if T.P. had been threatened and abused, testifying before her father would probably cause her considerable anxiety. On cross-examination, Dr. Senzig stated that T.P.'s emotional problems could have been caused by marital discord, relocation, or possibly be neurological in origin. The trial judge

1. AS 47.10.010(a)(2)(D) provides, in pertinent part:

> **Jurisdiction.** (a) Proceedings relating to a minor under 18 years of age residing or found in the state are governed by this chapter, when the court finds the minor
>
> .     .     .     .     .
>
> (2) to be a child in need of aid as a result of
>
> .     .     .     .     .
>
> (D) the child having been, or being in imminent and substantial danger of being, sexually abused either by the child's parent, guardian, or custodian, or as a result of conditions created by the child's parent, guardian, or

custodian, or by the failure of the parent, guardian, or custodian adequately to supervise the child....

2. Specifically, the court observed:

> I think in terms of her ability to perceive events now, to relate them and to know the difference between truth and a lie in terms of present matters I think that she is competent and I think at this point that's probably as far as we have to go. If she doesn't remember things in the past, she doesn't remember them and the record will stand, but she does appear to be at least minimally competent as the court opinions require.

then ruled that L.P. could not remain in the courtroom during T.P.'s trial testimony.

T.P. was called to testify the next day. Initially, T.P. responded to the Department's questions. She remembered seeing a movie in her kindergarten class and subsequently talking to her teacher. However, she became unresponsive when asked what she had told her teacher. She similarly failed to respond to questions concerning her father and the alleged abuse.[3] Judge Katz concluded that further examination would not be productive.

The Department next attempted to present testimony from Sandra Knight–Richardson, T.P.'s kindergarten teacher, concerning T.P.'s statements to her. L.P. objected to the admission of T.P.'s out-of-court statements as hearsay. In the ensuing discussion, Judge Katz observed that T.P. was "unavailable" under Alaska Evidence Rule 804(a)(2) or (3). The judge then stated that she would admit the statements if the Department could establish that they were sufficiently reliable.

As a preliminary showing of reliability, Ms. Knight–Richardson testified that, sometime around Halloween 1989, she had shown a film entitled "Touching" to her kindergarten class. The animated film was used to educate children about inappropriate touching and sexual abuse. Ms. Knight–Richardson noticed that T.P. started to cry during a discussion about "good and bad touching." At the conclusion of the film, T.P. continued to cry and Ms. Knight–Richardson asked T.P. what was wrong. Based on Ms. Knight–Richardson's testimony, the court ruled that T.P.'s out-of-court statements were sufficiently reli-

able to be admitted under Evidence Rule 804(b)(5).

Ms. Knight–Richardson then testified as follows:

> When [T.P.] started to cry, I did ask her what's wrong and she told me nothing, and I said are you sure and she said yes. I didn't want to press it, so this is when I continued to follow through with the film and then as I explained to the class what they were to do with the follow-up activities, she came to me this time because I just left her alone and she came up to me and put her arms around me and started to cry again and I asked her again what's wrong and she said well, nothing, and I said well, why are you crying, you don't cry for no reason, and then she said well, I'll get in trouble if I tell you, and I said no, you won't get in trouble, you can trust me, and she said well, I'll get my butt whipped if I tell you, and I said well, you can trust me, and at this—the—the other children were doing their follow-up and I had the opportunity to go over and just talk to her one on one and at that time, that's when she told me. She said well, my dad touched me and it was—and I didn't like it or it was uncomfortable. I don't remember her exact words, but she said my dad touched me and it wasn't—I didn't like it I think is what she said, and I said what do you mean, and she said well, he touched me and it was painful, and I said where did he touch you, and she said between my legs, and I just—I said—I said it's going to be okay and I hugged her and I said it'll be all right, don't worry about anything, and at that time, I went to the counselor and I

---

3. The trial transcript reveals that T.P. failed to respond to a number of questions put to her by counsel and the court.

> Counsel: [T.P.], after talking with your teacher and talking with this other lady, you talked to Miss Newell ... from the police department and she asked you some questions. Do you remember talking with her? [T.P.]?
>
> Counsel: She asked you some questions about what happened with your dad. Do you remember talking with her? Let the record reflect that [T.P.] is shrugging her shoulders in response to that question.
>
> Counsel: Can you tell me about what you said to her [T.P.]? Can you say yes or no, [T.P.]?

> Let the record reflect that [T.P.] indicates no, she can't tell me about what she said and she's unwilling to respond in the negative....
>
> Counsel: [T.P.], you also talked with your mom about stuff that happened with your dad. Do you remember talking with her about that stuff? Hum? Can you say yes or no, [T.P.]? Let the record reflect that [T.P.] is shrugging her shoulders.... Can you tell the judge what you said to your mom about it? Hum? What does that mean when you shrug your shoulders like that? Does that mean yes, no, or you don't know?

shared with the counselor what had happened and they took it—they took it from that point.

When asked if she could recall any other comments by T.P. about the incident, Ms. Knight–Richardson testified:

> Well, I did ask her where did it take place. She told me on the—on a porch, and I said are you sure. She said yes. I can say if I remember correctly that she felt very comfortable talking to me.

The Department then called T.P.'s mother, P.P., who testified that after she and L.P. separated in August 1989, she came to Alaska and moved in with her parents. P.P.'s parents live in a two bedroom mobile home with an exterior porch in an Anchorage trailer park. According to P.P., T.P.'s behavior changed around this time. When L.P. arrived in Alaska in the middle of October 1989, he and his family shared a single bedroom in the mobile home for several weeks. P.P. testified that she at first did not believe T.P.'s statements to her teacher concerning her father's alleged abuse, but over time, she came to believe that her daughter had been abused by her husband.

On cross-examination, P.P. testified that T.P. was a frequent bed wetter and that both she and L.P. regularly checked her daughter's diaper several times a night. She also testified that she did not wake up T.P. when she checked her diaper and that there would be no reason to take T.P. outside to the porch. L.P. only called one witness, the physician who had examined T.P. He testified that although he had found no indication of physical trauma, his

exam could not rule out either penile or digital penetration.

In its closing argument, the Department referred to Dr. Senzig's testimony and report in arguing that T.P. had been sexually abused. The court noted that Dr. Senzig's report had not been entered into evidence. L.P. then withdrew his previous objection and the report was admitted.[4] In L.P.'s closing statement, L.P. argued that Dr. Senzig's testimony was neither relevant nor probative on the issue of abuse. L.P. maintained that T.P. had confused his innocent diaper check for abuse after viewing the movie in her kindergarten class.

Following the hearing, the court ruled that T.P. was a "child in need of aid" due to the threat of sexual abuse and placed her in the custody of the Department until January 14, 1993. The Department placed T.P. in the care of her mother. L.P. was granted supervised visitation to be arranged by the Department.

This appeal followed.

## II. *Unavailability*

A finding of unavailability is a prerequisite to the admission of hearsay testimony under the catch-all provision of Alaska Evidence Rule 804(b)(5).[5] Rule 804(a) provides, in pertinent part:

> (a) *Definition of unavailability.* Unavailability as a witness includes situations in which the declarant
>
> .    .    .    .    .
>
> (2) persists in refusing to testify concerning the subject matter of his

---

**4.** The court had delayed ruling on the admissibility of the report when L.P. objected to its admission during Dr. Senzig's testimony.

**5.** Rule 804(b)(5) provides, in pertinent part, that an out-of-court statement is admissible if it is:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the

statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Alaska R.Evid. 804(b)(5). The admission of evidence is committed to the trial court's discretion and its rulings will not be overturned on appeal except for an abuse of discretion. *Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980); *In re A.S.W.,* 834 P.2d 801, 803 n. 3 (Alaska 1992).

statement despite an order of the court to do so; or

(3) establishes a lack of memory of the subject matter of his statement.

. . . . .

Alaska R.Evid. 804(a). L.P. argues that the record fails to support a finding of unavailability under either subsection (2) or (3). We disagree.

■ A witness must "persist[ ] in refusing to testify ... despite an order of the court to do so" before the trial court may declare the witness "unavailable" under Rule 804(a)(2). *See, e.g., Rychart v. State,* 778 P.2d 229, 231 (Alaska App.1989) (holding that a criminal defendant was unavailable under Rule 804(a)(2) when he refused to testify despite an explicit order from the trial judge). Although Judge Katz did not "order" T.P. to respond, she made repeated attempts to prompt T.P. to speak about the alleged abuse. It is our opinion that the trial judge should have considerable discretion in setting the tone of its "order" since the judge is in the best position to observe the child's demeanor and to determine how best to impress on the child the importance of answering questions. Given the nature of these proceedings and T.P.'s age, a direct order from the court would have been inappropriate and probably counterproductive. We conclude that T.P.'s persistent refusal to testify despite the prodding of Judge Katz, counsel and her mother is sufficient to support the trial court's Rule 804(a)(2) finding of unavailability.

The trial court also ruled that T.P. was unavailable under Alaska Rule of Evidence 804(a)(3). Generally, lack of memory under this subsection must be established by testimony. *See* Alaska R.Evid. 804(a); Alaska R.Evid. 804(a), Commentary; *see also State v. Just,* 138 Ariz. 534, 544, 675 P.2d 1353, 1363 (App.1983) (holding that a nine-year-old child was unavailable where she specifically testified that she did not remember what she had told the investigating officer shortly after her mother was murdered). L.P. maintains that the trial court erred in finding T.P. unavailable under this subsection because T.P. did not "testify" that she had no current recollection of the alleged abuse.

We believe that the trial court must have the discretion to rule that a child's testimony indirectly reveals the child's lack of memory when the child's age and relative maturity makes it difficult for the child to clearly articulate a lack of memory of the relevant events.[6] *See, e.g., State v. Slider,* 38 Wash.App. 689, 688 P.2d 538, 541 (1984) (holding that a two-year-old child was unavailable where her testimony at the pretrial hearing showed that she lacked any memory of the alleged incident of abuse, although she did remember that the defendant had baby-sat her). Given T.P.'s age and cognitive development, such a ruling is appropriate here.[7]

■ Cases involving the sexual abuse of children present very difficult evidentiary

**6.** We emphasize that a child's lack of memory should not be confused with the child's competency to testify. In *State v. Ryan,* 103 Wash.2d 165, 691 P.2d 197 (1984), the Washington supreme court observed that:
> incompetency and unavailability serve separate purposes and mean different things....
>
> Unavailability means that the proponent is not presently able to obtain a confrontable witness' testimony. It is usually based on the physical absence of the witness, but may also arise when the witness has asserted a privilege, refused to testify, or claims a lack of memory....
>
> Competency, on the other hand, means that the witness 'has sufficient mental capacity to understand the nature and obligation of an oath and [is] possessed of sufficient mind and memory to observe, recollect, and narrate the things she has seen or heard.'

*Id.* 691 P.2d at 202–03 (quoting *State v. Moorison,* 43 Wash.2d 23, 259 P.2d 1105 (1953)). On the record presented in this case, we see no reason to question the trial court's determination that T.P. was minimally competent.

**7.** L.P. further argues that the trial court erred in relying on T.P.'s limited testimony (i.e., that she remembered seeing the movie in her kindergarten class) after finding T.P. to be unavailable. We disagree. A witness may be "partially unavailable" if a witness has partial recollection of the relevant events. *See* E. Cleary, *McCormick on Evidence,* § 253 754–55 (3rd Ed.1984) ("if the forgetfulness is only partial, the appropriate solution would appear to be to resort to present testimony to the extent of recollection, supplementing with the hearsay testimony to the extent required.") (footnote omitted).

issues for the courts. Despite the adoption of procedures making the process of testifying less intimidating for a young child, the fact remains that many children are not able to discuss incidents of abuse even in a modified courtroom setting. *See, generally*, Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 Colum.L.Rev. 1745, 1749–50 (1983). Generally speaking, the rules of evidence were not developed to handle the problems presented by the child witness. Therefore our courts must be free to adapt these rules, where appropriate, to accommodate these unique cases. However, this increased flexibility places a proportionately greater burden on the trial judge to articulate clearly the reasons for her or his unavailability ruling. *See, cf., People v. Thomas*, 770 P.2d 1324, 1328 (Colo.1989) (under statute permitting the use of videotaped deposition when child victim of sexual assault is unavailable, trial court must make particularized findings concerning the unavailability of the child witness). Although we conclude that a finding of unavailability under either subsection (2) or (3) is sustainable on the record presented in this case, for the future, we strongly recommend that trial judges make specific findings explaining their controlling evidentiary rulings which involve children.

## III. *Reliability*

L.P. contends that the superior court erred in admitting T.P.'s out-of-court statements, arguing that they lack the circumstantial guarantees of trustworthiness required under Rule 804(b)(5).

■ We have recently addressed what guarantees of trustworthiness are required in CINA proceedings under Rule 804(b)(5). *See In re A.S.W. and E.W.*, 834 P.2d at 803–06. In *In re A.S.W.*, we noted a number of factors relevant to this determination: (1) the spontaneity of the child's statements; (2) the age of the child; (3) the use of "childish" terminology; (4) the consistency of the statements; (5) the mental state of the declarant; and (6) the lack of motive to fabricate. *Id.* at 804–05.

■ L.P. argues that T.P.'s statements do not exhibit sufficient indicia of reliability because they do not reveal a sexual awareness incompatible with those in T.P.'s age group. However, we emphasized in *In re A.S.W.* that the listed factors were not all inclusive and that they should not be applied mechanically. *Id.* at 804–05. " '[T]he unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.' " *Id.* at 804 n. 7 (quoting *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). The absence of any single factor is not dispositive.

■ L.P. also argues that the circumstances prompting T.P.'s statement were not sufficiently explored at trial since the film which provoked T.P.'s statements was neither entered into evidence nor adequately described. Without more information about the film's narrative, he maintains that the court could not find that the circumstances surrounding the statement were sufficiently reliable. He concludes that the spontaneity of T.P.'s statements is uncertain since the film may have led her to interpret innocent parental conduct (i.e., a diaper check) as "bad touching." Judge Katz considered and rejected this position, noting that T.P.

> hadn't cried to the teacher's recollection all year, she cries noticeably for the first time when she's been shown a film on this very subject and then she spontaneously after initially refusing to talk about it goes and tells the teacher that yeah, this is what's happened to her and the part that I found of particular note was that she said it happened on the porch. This wasn't suggested I don't—there's no reason to think it was suggested in the film about a cat. If it were just the touching to check the diaper, you know, I guess the question is why would she have come up with that? Doesn't that have a ring of truthfulness to it and doesn't that suggest that something was going on beyond checking the diaper?

Judge Katz's observations are reasonable and support her decision to admit the hearsay testimony. Furthermore, L.P.'s objec-

tions at this stage are untimely. L.P.'s counsel did not seek to enter the film into evidence nor did he question Ms. Knight–Richardson about the possible suggestiveness of the film's content and narrative during cross-examination. *See In re A.S.W.*, 834 P.2d at 803 n. 3 (holding that defendant could not argue on appeal that alleged child abuse victim's videotaped statement was coached where he had failed to cross-examine the trooper who had conducted the interview on this issue at trial).

Given T.P.'s age, the apparent lack of motive to fabricate, the spontaneity and timing of her statements, and the fact that she located the abuse as occurring on the porch, we conclude that Judge Katz did not abuse her discretion in admitting these statements.[8]

## IV. *Sufficiency of the Evidence*

Under AS 47.10.010, we will only overturn a trial court's finding that a child is in need of aid if we are "left with the definite and firm conviction that a mistake has been made." *A.H. v. State*, 779 P.2d 1229 (Alaska 1989).

The trial court found T.P. to be a "child in need of aid" due to the threat of sexual abuse. It based its finding primarily on T.P.'s statements to her teacher. The court also stated that Dr. Senzig's and P.P.'s testimony concerning T.P.'s emotional state corroborated Ms. Knight–Richardson's testimony.[9]

L.P. correctly points out that both Dr. Senzig's and P.P.'s testimony is not particularly probative on the issue of abuse because T.P.'s emotional state could have resulted from a number of factors unrelated to child abuse. Although some of this testimony indicated that T.P.'s emotional prob-

lems were linked to her father, the nature of this link is unclear. Our review of the record indicates that this testimony neither supports nor weakens the trial court's finding that T.P. is a child in need of aid.

The only telling evidence in this case is T.P.'s statement to her teacher that her father had touched her between her legs and hurt her. Although this does not constitute a clear accusation of sexual abuse, T.P.'s statement that the incident occurred on the porch cannot be easily reconciled with L.P.'s theory that T.P. misinterpreted an innocent diaper check for abuse.

T.P. made these unsolicited statements to her teacher after watching a film designed to educate young children about "bad touching." This film provoked a strong emotional response in T.P., who had never cried in class before. T.P. was also clearly frightened of the consequences of telling her teacher that her father had touched her.

The Department has the burden of proving by a preponderance of the evidence that a child is in need of aid. CINA Rule 15. Under this standard, the court only needed to find that it was more likely than not that T.P. had been abused. "Something is more likely than not true if you believe that the chance that it is true is even the slightest bit greater than the chance that it is false." Alaska Pattern Civil Jury Instructions 2.22. On the record before us, we cannot say that the trial court's decision was "clearly erroneous."

AFFIRMED.

---

8. We have recently held that an alleged abuser's due process right to cross-examine a child witness in CINA proceedings is adequately protected by the unavailability and reliability requirements of Rule 804. *See In re A.S.W. and E.W.*, 834 P.2d at 805–07. We therefore reject L.P.'s argument that the admission of T.P.'s out-of-court statements violated his state and federal right to confront the witnesses against him.

9. In making its oral ruling, the trial court also referred to Dr. Senzig's conclusion in her written report that "[s]exual matters are occupying

most of [T.P.'s] energy right now." The court's reliance on Dr. Senzig's report is troubling, since the report was written with the underlying assumption that T.P. had been abused. However, the court explicitly noted the underlying flaw of the report. Since we conclude that Ms. Knight–Richardson's testimony is sufficient, standing alone, to support the trial court's ruling, we do not feel that the report improperly influenced the court's decision. *See Love v. State*, 457 P.2d 622, 631 (Alaska 1969) (holding that an error is harmful if there is reasonable probability that the error affected the outcome).